IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

YVONNE LEE ROBERTSON,

    Petitioner,

v.                                                  Civil Action No. 1:16cv13
                                                      (Judge Keeley)

JENNIFER SAAD, Warden,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On January 29, 2016, the *pro se* Petitioner, an inmate incarcerated at Hazelton SFF in Bruceton Mills, West Virginia, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241, seeking an order requiring the Federal Bureau of Prisons ("BOP") to award her 12 months of prior custody credit for time spent on pretrial supervised release. ECF No. 1 at 8. Along with her petition, Petitioner filed a motion to proceed *in forma pauperis* ("IFP"). ECF No. 2. Because Petitioner had not filed a copy of her IFP motion on a court-approved form, or a copy of her Prisoner Trust Account Report ("PTAR") with attached Ledger Sheets, the Clerk of Court issued a Notice of Deficiency. On February 29, 2016, Petitioner filed her IFP motion, the PTAR, and a copy of an Inmate Request to Staff Member Response. ECF Nos. 9, 10 & 11. By Order entered March 1, 2016, Petitioner was granted permission to proceed as a pauper but directed to pay the $5.00 filing fee. ECF No. 12. Petitioner paid the requisite fee on April 15, 2016. ECF No. 15.

On April 25, 2016, the undersigned ordered the Respondent to show cause why the writ should not be granted. ECF No. 16. On May 16, 2016, Respondent filed a Response to the Order to Show Cause and a Motion to Dismiss, attaching certain exhibits. ECF No. 18. Because

Petitioner was proceeding *pro se,* on May 81, 2016, a Roseboro Notice was issued, advising Petitioner of her right to respond to the Respondent's dispositive motion. ECF No. 20. On May 23, 2016 and again on June 2, 2016, Petitioner filed responses to the Respondent's dispositive motion. ECF Nos. 21 & 23. This matter is pending before the undersigned for a Report and Recommendation.

## II. Facts[1]

### A. Conviction and Sentence

On February 9, 2010, in the Eastern District of Virginia, Petitioner and a co-defendant were charged in twelve-count indictment with a forfeiture allegation. ECF No. 1. Petitioner was charged in Count One with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1349, 1341 and 1343; in Counts Two – Eight with mail fraud, in violation of 18 U.S.C. §§1341 and 2; and in Counts Nine – Twelve with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. Id.

Petitioner was arrested on February 11, 2010 and released on bond. ECF Nos. 6, 7, & 10.

A sixteen-count superseding indictment with a forfeiture allegation was entered against Petitioner and her co-defendant on May 12, 2010, charging Petitioner in Count One with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349; in Counts Two – Eight with mail fraud, in violation of 18 U.S.C. §§ 1341 and 2; in Counts Nine – Twelve with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; in Counts Thirteen – Fifteen with money laundering, in violation of 18 U.S.C. §§ 1957 and 1952; and in Count Sixteen, with making a false statement to a law enforcement officer, in violation of 18 U.S.C. § 1001. ECF No. 25.

---

[1] The citations to the record in this section, unless otherwise specified, are to the docket in Petitioner's underlying criminal case, to be found on PACER at E.D. Virginia Criminal Case No. 4:10cr27-1.

2

After a five-day trial, on November 10, 2010, Petitioner was found guilty on all counts. ECF No. 63. She was permitted to continue on bond after trial. See Id., November 10, 2010 Docket Entry titled "(Day#5) JURY TRIAL PROCEEDINGS."

Petitioner was sentenced on April 28, 2011, to 84 months imprisonment on Counts One – Fifteen, to be served concurrently; and to a term of 60 months imprisonment on Count Sixteen, to be served concurrently with the sentences on Counts One - Fifteen. Upon release, she was sentenced to a three-year term of supervised release on all counts, to be served concurrently. ECF No. 87 at 4. Petitioner was also ordered to pay $1,600.00 in special assessments and $567,094.17 in restitution. Id. at 6. After sentencing, Petitioner was again continued on bond and ordered to self-surrender on May 12, 2011. Id. at April 28, 2011 Docket Entry titled "Minute Entry." Petitioner self-surrendered on May 12, 2011 as ordered. See N.D. W.Va. Case No. 1:16cv13, ECF No. 18-3 at 15.

Petitioner appealed, challenging the sufficiency of the evidence supporting her convictions on three counts of money laundering and one count of making a false statement to a law enforcement officer. On March 11, 2013, by unpublished *per curiam* opinion, the Fourth Circuit Court of Appeals affirmed in part, reversed Petitioner's Count Fourteen money laundering conviction and remanded to permit the district court to strike the $100 special assessment associated with that count. ECF No. 104.

On June 12, 2013, Petitioner filed a Motion to Vacate pursuant to 28 U.S.C. § 2255 and Motion for Modification and Reduction of Sentence in the sentencing court. ECF Nos. 107 & 108. On October 25, 2016, Petitioner's conviction on Count Fourteen was vacated [ECF No. 118]; an amended judgment was entered on November 5, 2013. ECF No. 119. Petitioner's Motion for Modification and Reduction of Sentence was denied by Order entered March 25,

2014. ECF No. 137. By Order entered April 4, 2014, her § 2255 motion was denied. ECF No. 140. Petitioner moved for reconsideration of the Order denying her Motion for Modification and Reduction of Sentence on December 1, 2014. By Order entered January 7, 2015, reconsideration was denied. ECF No. 150.

Petitioner's federal sentence commenced on the date it was imposed, specifically May 12, 2011, the date on which she self-surrendered.

Petitioner's projected release date, the date on which she will complete serving his federal sentence with consideration for good conduct time, is July 20, 2017. See N.D. W.Va. Case No. 1:16cv13, ECF No. 18-3 at 13.

It is undisputed by the parties that Petitioner properly exhausted her administrative remedies prior to filing this petition.

**B. Federal Habeas**

**1) The Petition**

Petitioner's claims, reworded and condensed here for clarity, are that

1) the Federal Bureau of Prisons ("BOP") erroneously and unlawfully calculated her projected release date when they failed to credit her with 12 months [sic] time spent on pretrial supervised release from February 10, 2010 –April 28, 2011 [ECF No. 1 at 5];

2) Because Petitioner had to adhere to conditions of supervised release or risk immediate revocation of her pretrial bond, she was in "official detention," thus, she was "in custody" for purposes of her sentence and is entitled to prior custody credit for the same. Id.

3) The BOP's refusal to award Petitioner prior custody credit is violating her right to timely release by causing her to serve a sentence of over 91 months, instead of the 84 months ordered by the sentencing court. Id. at 6.

Petitioner contends that she has exhausted her administrative remedies. Id. at 7 – 8.

4

As relief, Petitioner seeks to have her sentence recalculated to include twelve months of prior custody credit, "[b]ased on the previous opinion of a panel of Judges [sic] from both the 6th and 9th Circuit Courts." ECF No. 1 at 8.

**2) Warden's Response**

The Respondent argues that the petition should be dismissed or summary judgment granted in its favor because:

1) Petitioner is not entitled to any additional credit on her sentence because she was not in official detention during the period of time for which she seeks credit [ECF No. 18-1 at 3]; and

2) Petitioner's federal sentence commenced on May 12, 2011, the date she self-surrendered and was taken into BOP custody [id. at 4], thus, she is not entitled to credit for any time prior to that date while she was free on bond. Id. at 6.

**3) Petitioner's Responses to Warden's Dispositive Motion**

Petitioner reiterates the arguments previously made in her petition and attempts to refute the Warden's on the same, arguing that the court should order her to be released into a half-way house to serve the remainder of her sentence. ECF No. 21 at 5. She contends that the BOP has "read too much into" the statute, and cites to case law from the 6th and 9th Circuits. ECF No. 23 at 4 – 5.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to

the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin. 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a

sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

**IV. Analysis**

Petitioner contends she is entitled to prior custody credit for time spent on pretrial bond from February 10, 2010 – April 28, 2011, and that the BOP's failure to recognize this fact is a result of the BOP's reading "too much into" the custody statute [ECF No. 1 at 6] and Congress' failure to "explicitly define 'official custody' and 'official detention,'" leading to the use of the two terms synonymously. Id. at 7.

Respondent opposes the Petitioner's contentions, asserting that she cannot be given credit for time while she was free on supervised release. ECF No. 18-1 at 6.

"The Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive credit for any time spent in custody." United States v. Gonzalez, et al., 192 F.3d 350, 353 (2nd Cir. 1999) (citing United States v. Montez-Gaviria, 163 F.3d 697, 700-01 (2nd Cir. 1998)).

Eighteen U.S.C. § 3585(a) states that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Likewise, the Fourth Circuit has held that "[a] federal sentence cannot commence prior to the date it is pronounced." United States v. McLean, 867 F.2d 609, 1989 WL 5457 (4th Cir. January 13, 1989). Finally, BOP Program Statement 5880.28, at page 1-13, states that "[i]n no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed." Accordingly, as noted *supra*, Petitioner's federal sentence did not commence until May 12, 2011, the date she self-surrendered into the BOP's custody.

A determination of whether Petitioner has any entitlement to prior custody credit towards her term of imprisonment is provided at 18 U.S.C. § 3585. That provision establishes that

sentencing credit is available only for time spent in "official detention." 18 U.S.C. § 3585(b); see also Reno v. Koray, 515 U.S. 50, 55, 115 S.Ct. 2021, 2024 (1995):

> Credit for prior custody. A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed[.]

18 U.S.C. § 3585(b).

Under the Bail Reform Act of 1984, codified at 18 U.S.C. § 3141, the court has two choices in its treatment of a criminal defendant awaiting trial or imposition of sentence: a defendant can either be "release[d]" on bail or "detained" without bail. Reno, 515 U.S. at 57. If a court believes it necessary, either to assure the future appearance of the person or the safety of the community, it can order a defendant detained, "by issuing a "detention order" "directing that the person be committed to the custody of the Attorney General for confinement in a corrections facility," Id., citing § 3142(i)(2). Therefore, under the language of the Bail Reform Act of 1984, a defendant is only "detained" when committed to the Attorney General's custody; a defendant admitted to bail on restrictive conditions is "released." Id. at 57. Accordingly, "official detention" exists only when the BOP retains the discretion to transfer a prisoner from one penal or correctional facility to another, and credit for time spent in official detention is available only to defendants who were detained in a penal or correctional facility. Id. at 58. For purposes of obtaining sentencing credit, a critical distinction between defendants who are "released" and those who are "detained" is that "detained" defendants always remain subject to the control of the Attorney General, while "released" defendants are not in BOP custody and cannot be summarily relocated, except by judicial revocation or modification of the conditions of release. Id. at 63.

BOP Program Statement 5880.28 of the Sentence Computation Manual (CCCA of 1984), drafted in conjunction with *inter alia,* Reno v. Koray and 18 U.S.C. § 3585, reflects this, stating in pertinent part that

> time spent . . . as a condition of parole, probation or supervised release, is not creditable to the service of a subsequent sentence. In addition, a release condition that is highly restrictive," and that includes "house arrest," "electronic monitoring" or "home confinement;" or such as requiring the defendant to report daily to the U.S. Marshal, U.S. Probation Service, or other person; is not considered as time in official detention. **In short, under Koray, a defendant is not entitled to any time credit off the subsequent sentence, regardless of the severity or degree of restrictions, if such release was a condition of the bond or release on own recognizance, or as a condition of parole, probation or supervised release**."

BOP PS 5880.28, Sentence Computation Manual (CCCA of 1984) at page 1, 14G – 14H. (1999).

Further, "[t]he Fourth Circuit has emphatically determined that "[c]onditions of release are not custody."" Burgos v. Thompson, 879 F. Supp. 37, 38 (N.D. W.Va. 1995) (quoting United States v. Insley, 927 F.2d 185, 186 (4th Cir.1991)). In Insley, the appellant argued that the conditions of release of her appeal bond were so restrictive that they constituted "official detention." The Fourth Circuit disagreed:

> **For the purpose of calculating credit for time served under 18 U.S.C. § 3585, 'official detention' means imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration**." United States v. Woods, 888 F.2d 653, 655 (10th Cir. 1989) (no credit under § 3585 for time spent at halfway house as condition of release). The conditions of release to which Insley was subjected did not rise to the level of physical incarceration.

Insley, 927 F.2d at 186 (4th Cir. 1991) (emphasis added).

The undersigned notes that Petitioner has already been advised of the same in the Warden's February 9, 2016 response to her Inmate Request to Staff Member, a copy of which Petitioner filed with this Court. That response states in pertinent part:

> This is in response to your correspondence sent to the Office of the Attorney General dated December 8, 2015 in which you request jail credit from February 9, 2010 through November 9, 2010 and November 17, 2010 through April 28, 2011.
>
> A review of this matter reveals you received a total of two days of prior jail credit for March 26, 2008 and February 11, 2010.
>
> Program Statement 5880.28, <u>Sentence Computation Manual - CCA of 1984</u>, states, "in Reno v. Koray, 115 S. Ct 2021 (1995), the U.S. Supreme Court held that the time spent under restrictive conditions of release (including time spent in a community treatment center (CCC) or similar facility) was not official detention. You claim you were placed in official custody of the U.S. Marshal and were released to your home with conditions. **Under Koray, a defendant is not entitled to any time credit off the subsequent sentence, regardless of the severity or degree of . . . restrictions, if such release was a condition of bond or release on own recognizance, or as a condition of parole, probation or supervised release**.

ECF No. 11 (emphasis added).

Accordingly, because Petitioner's pretrial supervised release was determined by the court, outside of the control of the Attorney General, she is not entitled to any credit against her 84-month sentence for the time spent free on pretrial bond prior to the May 12, 2011 commencement of her sentence. <u>See</u> <u>Villansenor v. Caraway</u>, 2006 WL 1662919 (D. Minn., June 14, 2006) (citing <u>Reno v. Koray</u>).

### V. <u>Recommendation</u>

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss [ECF No. 18] be **GRANTED** and Petitioner's Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF Nos. 1 & 9) be **DENIED and DISMISSED.**

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to**

**appeal from a judgment of this Court based upon such recommendations**. 28 U.S.C. § 636(b)(l ); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to her last known address as reflected on the docket sheet and to transmit a copy electronically to all counsel of record.

DATE: October 26, 2016

/s/   James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE